MORRISON | FOERSTER

250 WEST 55TH STREET
NEW YORK, NY 10019-9601

TELEPHONE: 212.468.8000
FACSIMILE: 212.468.7900

WWW.MOFO.COM

MORRISON & FOERSTER LLP

BEIJING, BERLIN, BRUSSELS, DENVER,
HONG KONG, LONDON, LOS ANGELES,
NEW YORK, NORTHERN VIRGINIA,
PALO ALTO, SACRAMENTO, SAN DIEGO,
SAN FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

May 10, 2016

Writer's Direct Contact
+1 (212) 468.8035
MLadner@mofo.com

<u>Via ECF</u>

The Honorable Naomi R. Buchwald
United States District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312

Re: *Bethune v. LendingClub Corp., et al.*, Civ. Act. No. 1:16-cv-02578

Dear Judge Buchwald:

Pursuant to Your Honor's Individual Rules, we write on behalf of Defendants LendingClub Corporation ("LendingClub") and The Lending Club Members Trust (together, the "LendingClub Defendants") to request a pre-motion conference regarding a Motion to Compel Arbitration. The claims Plaintiff alleged arise from his written agreements with LendingClub and WebBank, under which Plaintiff expressly agreed to arbitrate the claims asserted here on an individual basis. He cannot now unilaterally repudiate those agreements.

**1.     Plaintiff Must Individually Arbitrate His Claims.**

LendingClub is an online credit marketplace, offering a technology platform to connect prospective borrowers with personal and business loans. The Lending Club Members Trust is a trust formed by LendingClub to hold the promissory notes associated with these loans. Plaintiff Ronald Bethune used LendingClub's platform to apply for and receive a loan from WebBank in June 2015, entering into a Borrower Membership Agreement (the "Membership Agreement") with Lending Club and a Loan Agreement with WebBank.[1] (*See* Compl. ¶¶ 23, 56; *see also* Exs. A, B.) The Membership Agreement and Loan Agreement each set forth the terms governing the Plaintiff's relationship with LendingClub and WebBank, respectively.

Both agreements include a clear and conspicuous arbitration provision (the "Arbitration Provision"), under which Plaintiff agreed to arbitrate "any past, present, or future claim, dispute, or controversy . . . relating to or arising out of this Agreement" involving LendingClub "and/or [WebBank] (or persons . . . connected with [LendingClub] and/or [WebBank])," (Membership Agreement ¶ 18.a; Loan Agreement ¶ 17.a), and under which Plaintiff agreed to waive resolution of a dispute "on a class, representative, or collective

---

[1] The Membership Agreement and Loan Agreement are attached as Exhibits A and B hereto, respectively.

basis," (Membership Agreement ¶ 18.f; Loan Agreement ¶ 17.f). Both agreements provide a mechanism to opt out of the Arbitration Provision. (Membership Agreement ¶ 18.b; Loan Agreement ¶ 17.b.) Plaintiff did not opt out of either Arbitration Provision.[2] Plaintiff filed this purported class action on April 6, 2016. The Complaint asserts claims, arising from his agreements with LendingClub and WebBank, for alleged violations of N.Y. Gen. Oblig. Law § 5-501 (civil usury), individual state civil usury laws, 18 U.S.C. § 1962(C) and § 1962(D) (RICO), and N.Y. Gen. Business Law § 349.

The Federal Arbitration Act ("FAA"), which applies here, provides that "[a] written provision in any maritime transaction or contract evidencing a transaction involving interstate commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Because arbitration is a matter of contract, the FAA requires that courts compel arbitration "in accordance with the terms of that agreement" upon the motion of either party to the agreement. 9 U.S.C. § 4; *see also Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) (emphasizing that courts must "rigorously enforce arbitration agreements according to their terms"). Accordingly, a court facing a motion to compel arbitration is limited to assessing two "gateway" questions concerning whether a dispute is arbitrable: "(1) whether there exists a valid agreement to arbitrate at all under the contract in question ... and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir.1996) (court is largely "limited to determining . . . whether a valid agreement or obligation to arbitrate exists").

Plaintiff's asserted claims are clearly arbitrable because both "gateway" factors have been satisfied. First, Plaintiff's agreements to arbitrate are valid and enforceable. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000) (arbitration agreements governed by the FAA are presumptively valid and enforceable). Second, this dispute, which concerns the loan Plaintiff obtained through LendingClub from WebBank that were the subject of the Membership and Loan Agreements, falls squarely within the broad scope of the arbitration provisions at issue. *See, e.g., Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 100 (S.D.N.Y. 2015) ("Clauses requiring arbitration of disputes 'arising out of or in connection with' underlying contracts are considered 'broad' arbitration clauses.") (citing *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (clause submitting to

---

[2] The arbitration provisions include claims against The Lending Club Members Trust as a party "connected with [LendingClub]." *See* Membership Agreement ¶ 18.a; Loan Agreement ¶ 17.a. Even if they did not, however, claims against The Lending Club Members Trust would be covered by the arbitration provisions under well-settled principles of estoppel. *See In re A2p SMS Antitrust Litig.*, 972 F. Supp. 2d 465, 476 (S.D.N.Y. 2013) ("[S]ignatories to an arbitration agreement can be compelled to arbitrate their claims with a non-signatory where a careful review of the relationship among the parties, the contracts they signed . . . , and the issues that had arisen among them discloses that the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the stopped party has signed.") (internal citations omitted).

arbitration "any claim or controversy arising out of or relating to the agreement" is "paradigm of a broad clause" and thus establishes presumption of arbitrability).

## 2. Deadlines to Otherwise Respond to the Complaint Should Be Stayed.

In light of the arbitrability of Plaintiff's claims, the LendingClub Defendants also respectfully request that the court stay the deadline to otherwise respond to the Plaintiff's complaint until the proposed motions to compel arbitration are resolved. The requested schedule will conserve the parties' and the Court's resources, and reserve resolution of the merits for the arbitrator.

If necessary, the LendingClub Defendants will also move to dismiss the Complaint pursuant to Rule 12(b)(6), for failure to state a claim. All of Plaintiff's state law claims are preempted under Section 27 of the Federal Deposit Insurance Act ("FDIA"), 12 U.S.C. § 1831d, which expressly preempts "any State constitution or statute" imposing limits on interest rates other than those allowed by the state in which a state-chartered, federally insured bank is located. *See* 12 U.S.C. § 1831(d)(a). WebBank is a state-chartered bank located in Utah, and is federally insured by the FDIC. *See* Compl. ¶¶ 12, 13, 45, 47. The loan at issue here, by Plaintiff's own admission, complies with Utah law. (*See, e.g.,* Compl. ¶¶ 12, 49, 84.)

Plaintiff likewise fails to state any claim under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. 1962(c), (d). Among the grounds for this motion, Plaintiff fails to plead a "pattern of racketeering activity or collection of unlawful debt" as required by 18 U.S.C. § 1962(c). As discussed above, the debt at issue is not usurious. And while Plaintiff attempts to predicate a "pattern of racketeering activity" on alleged mail and wire fraud, he does not allege any facts were misrepresented. Plaintiff's Section 1962(c) claim derives entirely from the argument that the interest rate applied to his loan was allegedly usurious; in fact, Plaintiff concedes that "nothing that Plaintiff alleges was illegal or improper" other than the allegedly usurious rate. Compl. ¶ 6. His loan documents accurately disclosed the applicable interest rate of 29.97%, and he does not allege that this rate or any loan terms were misrepresented or concealed. The only representations he contends are "fraudulent" concern the lawfulness of the applicable interest rate. Fraud, however, cannot be predicated on misrepresentations of law. *See, e.g., In re Mastercard Int'l Inc.*, 132 F. Supp. 2d 468, 482 (E.D. La. 2001) (where fraud claims depended upon a finding that online gambling activities and debts were illegal, defendants' representations with respect to the legality of those debts did not provide a basis for a fraud claim under Section 1962(c)) (citing *Allen v. Westpoint-Pepperell, Inc.*, 945 F.2d 40 (2d Cir. 1991); *see also Meacham v. Halley*, 103 F.2d 967, 971 (5th Cir. 1939) ("It is the general rule that fraud cannot be cannot be predicated upon misrepresentations of law").

For the foregoing reasons, the LendingClub Defendants request a pre-motion conference to seek the Court's leave to move to compel arbitration, and to stay all deadlines to otherwise respond to the Complaint until the proposed motion to compel arbitration is resolved.

MORRISON | FOERSTER

Judge Naomi R. Buchwald
May 10, 2016
Page Four

Respectfully submitted,

*Mark P. Ladner /zp*

Mark P. Ladner

Cc:    All counsel of record (via ECF and email)