

SIDLEY AUSTIN LLP
787 SEVENTH AVENUE
NEW YORK, NY 10019
(212) 839 5300
(212) 839 5599 FAX

BEIJING
BOSTON
BRUSSELS
CHICAGO
DALLAS
GENEVA

HONG KONG
HOUSTON
LONDON
LOS ANGELES
NEW YORK
PALO ALTO

SAN FRANCISCO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
WASHINGTON, D.C.

bnagin@sidley.com
(212) 839-5911

FOUNDED 1866

May 11, 2016

**VIA ECF**
The Honorable Naomi Reice Buchwald
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 21A
New York, NY 10007

Re: *Bethune v. LendingClub Corp.*, No. 16-cv-2578-NRB

Dear Judge Buchwald:

We represent WebBank in the above-referenced action. In accordance with Rule 2(B) of this Court's Individual Rules, WebBank respectfully requests a pre-motion conference with respect to a Motion to Compel Arbitration. WebBank has a written agreement with Plaintiff that clearly provides that all claims between the parties will be resolved through arbitration.

If necessary, WebBank also will move in this forum to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, because the complaint fails to state a claim under state or federal law. But because of the presumption that Plaintiff's claims are arbitrable, and to conserve judicial and private resources, WebBank asks this Court to defer setting a schedule for other responsive pleadings until after the Court resolves WebBank's Motion to Compel Arbitration.

<u>Motion to Compel Arbitration</u>

Plaintiff asserts putative class claims for alleged violations of N.Y. Gen. Oblig. Law § 5-501 (civil usury), individual state civil usury laws, 18 U.S.C. § 1962(C) and § 1962(D) (RICO), and N.Y. Gen. Business Law § 349. Plaintiff's claims arise from a Loan Agreement (the "Agreement") governing Plaintiff's relationship with WebBank. The Agreement, which Plaintiff electronically signed, requires arbitration of, among other things,

> any past, present, or future claim, dispute, or controversy . . . relating to or arising out of this Agreement, any Note, the Site, and/or the activities or relationships that involve, lead to, or result from any of the foregoing . . . . Claims are subject to arbitration regardless of whether they arise from contract; tort (intentional or otherwise); a constitution, statute, common law, or principles of equity; or otherwise. Claims include matters arising as initial claims, counter-claims, cross-claims, third-party claims, or otherwise.



Loan Agreement, ¶17(a). Plaintiff is also party to a Borrower Membership Agreement with LendingClub Corporation that has a comparable arbitration agreement. Borrower Membership Agreement, ¶18(a).

Under the Federal Arbitration Act ("FAA"), which applies here, "courts must 'rigorously enforce' arbitration agreements." *Am. Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2309 (2013). Arbitration should be compelled where, as here: (1) a valid, enforceable agreement to arbitrate exists; and (2) the claims at issue fall within the scope of that agreement. *See Bank Julius Baer & Co., Ltd. v. Waxfield Ltd.*, 424 F.3d 278, 281 (2d Cir. 2005). Both of these prongs are satisfied here. *First*, an arbitration agreement governed by the FAA, like the provision at issue here, is presumptively valid and enforceable. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89-92 (2000). *Second*, Plaintiff's claims, which arise from the Agreement, plainly fall within the scope of the Agreement's broad arbitration provision. *See Paramedics Electromedicina Comercial, Ltd. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 653 (2d Cir. 2004) (arbitration is to be compelled unless "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," resolving any doubts "in favor of coverage").

<u>Motion To Dismiss For Failure To State A Claim Under Rule 12(b)(6)</u>

Each of plaintiff's state law claims is preempted by Section 27 of the Federal Deposit Insurance Act ("FDIA"), 12 U.S.C. § 1831d. Section 27 expressly preempts "any State constitution or statute" that imposes limits on interest rates other than those allowed by the state in which a state-chartered, federally insured bank is located. *See* 12 U.S.C. § 1831(d)(a). WebBank is a state-chartered bank located in Salt Lake City, Utah, and is federally insured and regulated by the Federal Deposit Insurance Corporation. *See* Compl. ¶¶ 12, 13, 45, 47; *Sawyer v. Bill Me Later, Inc.*, 23 F. Supp. 3d 1359, 1363, 1366-68 (D. Utah 2014). Plaintiff admits that WebBank is the lender and "funding agent" that "enter[ed] into the note with the individual borrowers," that Lending Club Corporation is "the servicer of the note," and that WebBank and Lending Club collaborate in a "lending process." *See, e.g.*, Compl. ¶¶ 5, 13, 14, 45, 47. Plaintiff also admits that his interest rate complies with Utah law. *E.g.*, Compl. ¶ 12, 49, 84. Under Section 27, WebBank may charge interest rates to individual borrowers throughout the country at rates that Utah permits, subject to FDIC oversight and control, and without constraint by the diverse usury laws of individual states. *See Sawyer*, 23 F. Supp. 3d at 1363-70.

The complaint also fails to state a claim either for violating or for conspiring to violate Section 1962(c) of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. 1962(c),(d). Plaintiff concedes that "nothing that Plaintiff alleges was illegal or improper" other than the allegedly usurious interest rate. Compl. ¶ 6. The allegedly usurious interest rate, however, is not actionable under RICO for at least four independent reasons.

*First*, while Section 1962(c) makes it unlawful to "conduct or participate" in an enterprise's affairs "through a pattern of racketeering activity or collection of unlawful debt" (18 U.S.C. § 1962(c)), RICO expressly defines "[u]nlawful debt" as "the business of lending money or a thing of value at a rate *usurious under State or Federal law*, where the usurious rate is *at least twice* the enforceable rate;" *see* 18 U.S.C. § 1961(6) (emphasis added). The alleged interest rate here is not "usurious under State or Federal law" because, for the reasons stated above, the rate is lawful under Utah law and the FDIA preempts the application of New York law. The

 
alleged usurious rate of "29.97%" fails to state a RICO claim for the independent reason that it is *less* than twice the alleged New York limit of "16%" (Complaint ¶ 18) and therefore is not an "unlawful debt" under Section 1961(6).  Plaintiff's loan thus is not actionable under Section 1962(c) as an unlawful debt or as the gravamen of the alleged pattern of racketeering activity.  *Second,* the alleged predicate acts of mail and wire fraud also independently fail as a matter of law under RICO and Rule 9(b) of the Federal Rules of Civil Procedure because they are not pleaded with particularity.  *See, e.g.*, *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 119 (2d Cir. 2013).  *Third,* because the mail and wire communications allegedly reveal (rather than disguise) the charging of interest at 29.97%, they are not communications "'in furtherance'" of any fraudulent scheme."  *See id.* at 119-20 (citation omitted) (mailing of pay stubs that reveal failure to compensate for all allegedly compensable overtime cannot serve as allegations of mail fraud sufficient to support a RICO claim).  *Finally*, the Complaint's allegations of violations of state usury laws are insufficient to allege a "pattern of racketeering activity" as Section 1862(c) requires, especially given the Complaint's concessions that there is "nothing" "illegal or improper" in the "business model" other than the allegedly usurious interest rate (Compl. ¶ 6), and that "[g]enerally, banks are able to . . . legally export[] their own home state laws . . . to states that have usury laws."  (Compl. ¶ 49).

Respectfully Submitted,

/s/ Benjamin R. Nagin

Benjamin R. Nagin

cc:  All counsel of record (via email)