UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

RONALD BETHUNE, on behalf of himself and                  Case No. 1:16-cv-02578-NRB
all others similarly situated,

                  Plaintiff,

      v.

LENDINGCLUB CORPORATION; WEBBANK;
STEEL PARTNERS HOLDINGS, L.P.; THE
LENDING CLUB MEMBERS TRUST; and
DOES 1 through 10, inclusive,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**DEFENDANTS' JOINT BRIEF IN SUPPORT OF
<u>MOTIONS TO COMPEL ARBITRATION AND TO STAY ACTION</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS ...............................................................................................3

ARGUMENT ....................................................................................................................5

I.      The FAA Emphatically Favors Arbitration. .....................................................5

II.    Plaintiff's Claims Fall Within The Scope Of The Broad Arbitration Provisions ...............7

III.   The Arbitrator Must Determine Whether The Arbitration Provisions
       Are Valid And Enforceable. ...........................................................................8

IV.   Even If The Court Were To Address Whether The Arbitration Provisions
       Are Valid And Enforceable, Arbitration Must Be Compelled. ........................10

V.    Plaintiff Is Required to Arbitrate His Causes of Action Against Steel Partners ...............13

       A.     The Arbitrator Must Decide Whether Plaintiff's Causes of Action
               Against Steel Partners Are Arbitrable. .................................................13

       B.     Plaintiff Is Estopped From Avoiding Arbitration Against Steel Partners ..............14

               1.     Plaintiff's Causes of Action Against Steel Partners Arise
                     Under the Loan Agreement Containing the Arbitration Provision ...........15

               2.     The Alleged Relationship Between Plaintiff and Steel Partners
                     Justifies Estoppel. ..................................................................17

       C.     The Court Should Compel Arbitration Because Steel Partners Allegedly
               Acted As WebBank's Agent. ...............................................................18

VI.   Plaintiff's Claims Must Proceed To Arbitration On An Individual Basis .......................18

CONCLUSION.................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re A2P SMS Antitrust Litig.*,
  972 F. Supp. 2d 465 (S.D.N.Y. 2013)......................................................................14

*Alghanim v. Alghanim*,
  828 F. Supp. 2d 636 (S.D.N.Y. 2011)..............................................................15, 18

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
  513 U.S. 265 (1995)......................................................................................................6

*Am. Express Co. v. Italian Colors Rest.*,
  133 S. Ct. 2304 (2013)...........................................................................................6, 19

*Application of Ballabon v. Straight Path IP Grp., Inc.*,
  No. 15-cv-5016, 2015 WL 6965162 (S.D.N.Y. Nov. 10, 2015).............................6

*Arnold v. D'Amato*,
  No. 14-cv-6457, 2015 WL 4503533 (S.D.N.Y. Jul. 23, 2015)..............................18

*Arshad v. Transp. Sys., Inc.*,
  No. 15-cv-2138, 2016 WL 1651845 (S.D.N.Y. Apr. 25, 2016) ..............................7

*AT&T Mobility v. Concepcion*,
  563 U.S. 333 (2011)...............................................................................................6, 18

*Bank Julius Baer & Co., Ltd. v. Waxfield Ltd.*,
  424 F.3d 278 (2d Cir. 2005).........................................................................................6

*Benzemann v. Citibank N.A.*,
  No. 12 Civ. 9145, 2014 WL 2933140 (S.D.N.Y. Jun. 27, 2014)
  *aff'd in relevant part*, 806 F.3d 98 (2d Cir. 2015) .................................................8

*Buckeye Check Cashing, Inc. v. Cardegna*,
  546 U.S. 440 (2006).................................................................................................6, 9

*Carroll v. Leboeuf, Lamb, Greene & MacRae, LLP*
  374 F. Supp. 2d 375 (S.D.N.Y 2005)......................................................................15

*Contec Corp. v. Remote Solution Co., Ltd.*,
  398 F.3d 205 (2d Cir. 2005)..................................................................................8, 14

*DirecTV v. Imburgia*,
  136 S.Ct. 436 (2015)............................................................................................12, 19

i

*Doctor's Assocs., Inc. v Casarotto*,
    517 U.S. 681 ......................................................................................................12

*Elder v. BMO Harris Bank, N.A.*,
    No. 13-cv-304, 2014 WL 1429334 (D. Md. Apr. 11, 2014)....................................17

*Giles v. GE Money Bank*,
    No. 2:11-cv-434, 2011 WL 4501099 (D. Nev. Sept. 27, 2011)...............................12

*Gonzalez v. Citigroup*,
    No. 09-cv-017, 2009 WL 2340678 (D. Del. Jul. 30, 2009)....................................10

*Graham v. BMO Harris Bank, N.A.*,
    No. 13-cv-1460, 2014 WL 4090548 (D. Conn. Jul. 16, 2014) ..........................17, 18

*Graham v. State Farm Mut. Auto. Ins. Co.*,
    565 A.2d 908 (Del. 1989) ....................................................................................11

*Green Tree Fin. Corp.-Ala. v. Randolph*,
    531 U.S. 79 (2000)................................................................................................7

*Heiges v. JP Morgan Chase Bank, N.A.*,
    521 F. Supp. 2d 641 (N.D. Ohio 2007)................................................................12

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
    387 F.3d 163 (2d Cir. 2004)....................................................................15, 16, 17

*KPMG LLP v. Cocchi*,
    132 S. Ct. 23 (2011)..............................................................................................6

*Lapina v. Men Women N.Y. Model Mgmt. Inc.*,
    86 F. Supp. 3d 277 (S.D.N.Y. 2015).................................................................13, 14

*Mahant v. Lehman Bros.*,
    No. 99-cv-4421, 2000 WL 1738399 (S.D.N.Y. Nov. 22, 2000)...............................9

*Miller v. Corinthian Colleges, Inc.*,
    769 F. Supp. 2d 1336 (D. Utah 2011)..............................................................10, 11

*Moss v. BMO Harris Bank, N.A.*,
    24 F. Supp. 3d 281 (E.D.N.Y. 2014)
    *vacated in part on other grounds*, 114 F. Supp. 3d 61 (E.D.N.Y. 2015)..................16, 17, 18

*Nayal v. HIP Network Servs. IPA, Inc.*,
    620 F. Supp. 2d 566 (S.D.N.Y. 2009)..................................................................10

*Ottawa Office Integration Inc. v. FTF Bus. Sys., Inc.*,
    132 F. Supp. 2d 215 (S.D.N.Y. 2001)....................................................................6

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967) ............................................................................6, 9

*Ragone v. Atlantic Video at Manhattan Ctr.*,
    595 F.3d 115 (2d Cir. 2010) ...................................................................14

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010) .................................................................................8

*Riley v. BMO Harris Bank, N.A., et al.*,
    61 F. Supp. 3d 92 (D.D.C. 2014) .............................................................17

*Shetiwy v. Midland Credit Mgmt.*,
    959 F. Supp. 2d 469 (S.D.N.Y. 2013) ......................................................19

*Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*,
    198 F.3d 88 (2d Cir. 1999) .....................................................................15

*Sokol Holdings, Inc. v. BMB Munai, Inc.*,
    542 F.3d 354 (2d Cir. 2008) ...................................................................17

*Stinger v. Chase Bank, USA, NA*,
    265 F. App'x. 224 (5th Cir. 2008) ...........................................................12

*WeWork Cos. Inc. v. Zoumer*,
    No. 16-cv-457, 2016 WL 1337280 (S.D.N.Y. Apr. 5, 2016) ..................10

*Wright v. SFX Entm't Inc.*,
    No. 00-cv-5354, 2001 WL 103433 (S.D.N.Y. Feb. 7, 2001) ...................9

*Wynne v. Am. Express Co.*,
    No. 09-cv-00260, 2010 WL 3860362 (E.D. Tex. Sept. 30, 2010).........12

**Statutes**

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ....................................... passim

Defendants LendingClub Corporation, The Lending Club Members Trust (collectively, "LendingClub"), WebBank, and Steel Partners Holdings, L.P. ("Steel Partners") (together, "Defendants"), by the undersigned attorneys, respectfully submit this joint memorandum of law[1] in support of their respective motions, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA"), for an Order compelling Plaintiff Ronald Bethune ("Plaintiff") to arbitrate his claims in the above-referenced action against Defendants on an individual basis and to stay such claims pending the outcome of the arbitration proceedings.[2]

## PRELIMINARY STATEMENT

The claims in this action arise from Plaintiff's written agreements with WebBank and LendingClub, through which Plaintiff obtained a personal loan. When Plaintiff entered into these agreements, he expressly agreed to arbitrate the claims asserted here on an individual basis. He cannot now unilaterally repudiate those agreements.

Plaintiff's causes of action arise from a personal loan that he obtained from WebBank through LendingClub's "internet-based [loan] matching system." In connection with the loan at issue, Plaintiff executed a "Borrower Agreement" and a "Loan Agreement" with LendingClub and WebBank, respectively. In both of those agreements, Plaintiff agreed to be bound by a mutually-enforceable arbitration agreement covering "any past, present, or future claim, dispute, or controversy . . . relating to or arising out of this Agreement," any promissory note issued thereunder, or LendingClub's website (the "Arbitration Provisions"). Because Plaintiff's claims

---

[1] Defendants are filing a joint brief in accordance with the Court's suggestion. *See* Dkt. 26.

[2] In the event this Court denies Defendants' motions to compel arbitration, Defendants intend to move to dismiss Plaintiff's claims under Fed. R. Civ. P. 12(b)(6) on a schedule to be determined by the Court.

fall within the scope of these unquestionably broad provisions, the FAA requires him to arbitrate, rather than litigate, them.

Plaintiff does not dispute that he agreed to be bound by the Arbitration Provisions or that they encompass his claims. Nor does he allege that he opted out of the Arbitration Provisions, as was his right to do. Rather, Plaintiff previews in his pre-motion letter (Dkt. 25) that he will assert that it would be "unconscionable" to enforce those provisions. This argument fails for at least two reasons:

*First*, and as a threshold and dispositive matter, Plaintiff expressly agreed that he would arbitrate, rather than litigate, any disputes regarding "the validity or enforceability of th[e] Arbitration Provision[s]," which plainly includes any dispute over whether the Arbitration Provisions themselves are "unconscionable." This Court–and others in this Circuit–routinely enforces such agreements. Further, while Plaintiff suggests that the Arbitration Provisions themselves are unconscionable, Plaintiff's Complaint and pre-motion letter in fact evince an attack on the parties' agreements generally, not on the Arbitration Provisions specifically. The Supreme Court has held repeatedly that an arbitrator must resolve disputes of this very type.

*Second*, even if it were appropriate for the Court to resolve the issue of the enforceability of the Arbitration Provisions, which it is not, Plaintiff cannot demonstrate that those provisions are unconscionable. On the contrary, the Arbitration Provisions bear all the hallmarks of enforceability, including: mutuality; advising the plaintiff in all capital letters that he is agreeing to arbitration; allowing for a reasonable opportunity to opt out after signing the agreement; and providing for almost all of the arbitration fees and expenses to be covered by the defendant.

Plaintiff also must be compelled to arbitrate his claims against both Steel Partners and The Lending Club Members Trust, which are identical to his claims against WebBank and

LendingClub. Even though Steel Partners and The Lending Club Members Trust are not signatories to either the Loan Agreement or the Borrower Agreement, Plaintiff explicitly agreed to arbitrate his disputes—and the arbitrability of his disputes—not only with WebBank and LendingClub, but also with any party "connected with" them. Plaintiff's own allegations establish that Steel Partners and The Lending Club Members Trust fall within this group. Thus, as with Plaintiff's claims against WebBank and LendingClub, the Court should compel arbitration so that the arbitrator can decide whether Plaintiff's claims against Steel Partners and The Lending Club Members Trust are arbitrable. Alternatively, if the question of arbitrability is one for this Court to decide, then Plaintiff should be compelled to arbitrate with Steel Partners and The Lending Club Members Trust under the express terms of the Arbitration Provisions and the doctrines of equitable estoppel and agency.

## STATEMENT OF FACTS

Plaintiff alleges that he obtained a personal loan through LendingClub's loan-matching website. Compl. ¶¶ 1, 18. Plaintiff asserts that, while WebBank purportedly funded the loan, it allegedly acted as a "pass-through" entity that allowed LendingClub to take advantage of the absence of usury laws in WebBank's state of incorporation. *Id*. ¶¶ 11-17. Plaintiff thus contends that the agreements through which Plaintiff obtained his loan are "unlawful" and "void" (*id*. ¶¶ 61, 62), and asserts claims for alleged violations of state usury laws, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and New York's Consumer Protection Act (*id*. ¶¶ 74-116).

The agreements through which Plaintiff obtained the relevant loan are a Borrower Agreement that Plaintiff executed with LendingClub and a Loan Agreement that Plaintiff executed with WebBank (together, the "Agreements"). *See* Declaration of Jason Altieri ("Altieri Decl."), Exs. A & B, respectively. The Agreements, which Plaintiff electronically signed and

confirmed that he "ha[d] read and agree[d] to" (*Id.*, Exs. A at p. 6; B at p. 11; Compl. ¶ 62),

require arbitration of, among other things:

> ***any past, present, or future claim, dispute, or controversy . . . relating to or arising out of this Agreement, any Note, the Site***, and/or the activities or relationships that involve, lead to, or result from any of the foregoing, ***including . . . the validity or enforceability of this Arbitration Provision***, ***any part thereof, or the entire Agreement***. Claims are subject to arbitration regardless of whether they arise from contract; tort (intentional or otherwise); a constitution, statute, common law, or principles of equity; or otherwise. Claims include matters arising as initial claims, counter-claims, cross-claims, third-party claims, or otherwise. The ***scope*** of this Arbitration Provision is to be ***given the broadest possible interpretation*** that is enforceable.

Altieri Decl., Ex. A at ¶ 18(a); Ex. B. at ¶ 17(a) (emphases added).

The Arbitration Provisions allow for Plaintiff to opt-out at any time up to 30 days after his acceptance of the Agreements. *Id.*, Ex. A at ¶ 18(b); Ex. B at ¶ 17(b). The Arbitration Provisions further provide that the fees and costs of arbitration will be allocated in accordance with the rules of the selected arbitration administrator (either the American Arbitration Association ("AAA") or JAMS). If Plaintiff selects AAA arbitration, he will be required to pay, at most, a $200 filing fee, with all remaining costs, including hearing and arbitrator fees, covered by Defendants. *Id.*, Ex. A at ¶ 18(d); Ex. B at ¶ 17(d); Declaration of Benjamin R. Nagin, Ex. 1 (AAA Consumer Arbitration Rules), at 33.

The Agreements are three and four pages long, respectively, excluding exhibits, with each Agreement allotting one full page to its respective Arbitration Provision. The Loan Agreement states in all capital letters immediately preceding the Arbitration Provision that a limitation of rights is involved:

> I HAVE READ THIS PROVISION CAREFULLY AND UNDERSTAND THAT IT LIMITS MY RIGHTS IN THE EVENT OF A DISPUTE BETWEEN YOU AND ME. I

UNDERSTAND THAT I HAVE THE RIGHT TO REJECT THIS
PROVISION[.]

Altieri Decl., Ex. B at ¶ 17.

The Borrower Agreement states in all capital letters that:

> THE PARTIES ACKNOWLEDGE THAT THEY HAVE A
> RIGHT TO LITIGATE CLAIMS THROUGH A COURT
> BEFORE A JUDGE OR JURY, BUT WILL NOT HAVE THAT
> RIGHT IF ANY PARTY ELECTS ARBITRATION PURSUANT
> TO THIS ARBITRATION PROVISION.  THE PARTIES
> HEREBY KNOWINGLY AND VOLUNTARILY WAIVE
> THEIR RIGHTS TO LITIGATE SUCH CLAIMS IN A COURT
> BEFORE A JUDGE OR JURY UPON ELECTION OF
> ARBITRATION BY ANY PARTY.

*Id.*., Ex. A at ¶ 18.

Both Agreements further provide in all capital letters that:

> NO ARBITRATION SHALL PROCEED ON A CLASS,
> REPRESENTATIVE, OR COLLECTIVE BASIS (INCLUDING
> AS PRIVATE ATTORNEY GENERAL ON BEHALF OF
> OTHERS), EVEN IF THE CLAIM OR CLAIMS THAT ARE
> THE SUBJECT OF THE ARBITRATION HAD PREVIOUSLY
> BEEN ASSERTED (OR COULD HAVE BEEN ASSERTED) IN
> A COURT AS CLASS REPRESENTATIVE, OR COLLECTIVE
> ACTIONS IN A COURT.

*Id.*, Ex.. A at ¶ 18(f); Ex. B at ¶ 17(f).[3]

## ARGUMENT

### I.    The FAA Emphatically Favors Arbitration.

Section 2 of the FAA mandates that binding arbitration agreements in contracts

"evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and

enforceable, save upon such grounds as exist at law or in equity for the revocation of any

---

[3]    Any challenge to this class waiver provision–which Plaintiff has not asserted–is excluded from the
provision assigning questions of arbitrability to the arbitrator and must be resolved by the Court.  Altieri Decl., Ex.
A at ¶ 18(f); Ex. B at ¶ 17(f).

contract." 9 U.S.C. § 2; *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts."). The United States Supreme Court has made clear that the FAA broadly applies to any transaction directly or indirectly affecting interstate commerce. *See*, *e.g.*, *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 277 (1995); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967).[4]

Over the last several years, the United States Supreme Court has issued a series of decisions confirming that the FAA "reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'" *KPMG LLP v. Cocchi*, 132 S. Ct. 23, 25 (2011) (per curiam) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)); *see also Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) ("consistent with [the FAA's] text, courts must 'rigorously enforce' arbitration agreements") (citation omitted); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (The "principal purpose of the FAA is to ensur[e] that private arbitration agreements are enforced according to their terms.") (internal quotation marks omitted).

Under the FAA, arbitration must be compelled where: (1) a valid, enforceable agreement to arbitrate exists; and (2) the claims at issue fall within the scope of that agreement. *See Bank Julius Baer & Co., Ltd. v. Waxfield Ltd.*, 424 F.3d 278, 281 (2d Cir. 2005), *abrogated on other grounds by Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010). An arbitration

---

[4]     The FAA applies to this dispute because the Agreements were made between Plaintiff, who resides in New York, and LendingClub and WebBank, which reside in Delaware and Utah, respectively. Compl. ¶¶ 23-25; *see also Application of Ballabon v. Straight Path IP Grp., Inc.*, No. 15-cv-5016, 2015 WL 6965162, at *4 (S.D.N.Y. Nov. 10, 2015) (transaction involved "interstate commerce," and therefore FAA governed, where parties were domiciliaries of different states); *Ottawa Office Integration Inc. v. FTF Bus. Sys., Inc.*, 132 F. Supp. 2d 215, 219 (S.D.N.Y. 2001) (same, involving New York company and Canadian company). The Arbitration Provisions explicitly state that they are governed by the FAA. Altieri Decl., Ex. A at ¶ 18(g); Ex. B at ¶ 17(g).

agreement governed by the FAA, like the Arbitration Provisions here, is *presumed* to be valid and enforceable.  Indeed, it is well settled that the party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000).

As set forth below, Plaintiff cannot meet this heavy burden because:  (1) his claims fall squarely within the Arbitration Provisions, which broadly encompass claims relating to his agreements with LendingClub and WebBank; (2) the Arbitration Provisions contain a delegation clause, reserving the question of whether they are valid and enforceable for the arbitrator; and (3) even if the Court were to decide the question of validity, Plaintiff offers no reasons—because there are none—why his agreements to arbitrate this dispute are not enforceable.

## II.     Plaintiff's Claims Fall Within The Scope Of The Broad Arbitration Provisions.

Plaintiff does not appear to dispute the fact that his claims fall within the scope of the Arbitration Provisions, nor could he.  Indeed, the Arbitration Provisions represent the "paradigm" of a broad arbitration clause.  *Compare* Altieri Decl., Ex. A at ¶ 18(a); Ex. B at ¶ 17(a) (requiring arbitration of any claim "relating to or arising out of this Agreement, any Note, the Site . . .") *with Arshad v. Transp. Sys., Inc.*, No. 15-cv-2138, 2016 WL 1651845, at *5 (S.D.N.Y. Apr. 25, 2016) (Buchwald, J.) (an arbitration clause covering "any claim or controversy arising out of or relating to the agreement" is "the paradigm of a broad clause") (quoting *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995)). Plaintiff's claims, which relate to interest charged under the "Note[s]" issued pursuant to the Agreements, plainly "relate to" or "arise out of" the Notes and Agreements.  Accordingly, this dispute is arbitrable so long as the Arbitration Provisions are "valid" and "enforceable."

## III. The Arbitrator Must Determine Whether The Arbitration Provisions Are Valid And Enforceable.

Because Plaintiff's claims fall within the scope of the Arbitration Provisions, the Court's inquiry should end. That is because Plaintiff expressly agreed in both Agreements that he would arbitrate any claim relating to "the validity or enforceability of this Arbitration Provision[.]" Altieri Decl., Ex. A at ¶ 18(a); Ex. B at ¶ 17(a). As this Court has explained in granting a motion to compel arbitration, while "there is a general presumption that courts, rather than arbitrators," should decide the question of arbitrability, "that presumption can be rebutted when there is clear and unmistakable evidence from the arbitration agreement . . . that the parties intended that the question of arbitrability shall be decided by the arbitrator." *Benzemann v. Citibank N.A.*, No. 12 Civ. 9145, 2014 WL 2933140, at *3 (S.D.N.Y. Jun. 27, 2014) (Buchwald, J.), *aff'd in relevant part*, 806 F.3d 98 (2d Cir. 2015) (internal citations and quotation marks omitted); *see also Contec Corp. v. Remote Solution Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005) (same).

Plaintiff asserts that the Arbitration Provisions are unconscionable and should not be enforced. But, like in *Benzemann*, "the plain language of the Agreement provides clear and unmistakable evidence that [the parties] agreed to arbitrate the question of arbitrability," and Plaintiff has raised "no argument suggesting that this delegation provision itself is unconscionable[.]" 2014 WL 2933140, at *3. The Court must "therefore enforce it according to its terms." *Id.*

Moreover, Plaintiff's challenge does not appear to be directed at his agreements to arbitrate at all. Rather than point to any aspect of the Arbitration Provisions that he claims is unconscionable, Plaintiff merely argues that the agreements as a *whole* are unconscionable. But a party seeking to avoid determination of validity by the arbitrator cannot do so by challenging the enforceability of an agreement as a whole. *See Rent-A-Center, West, Inc. v. Jackson*, 561

U.S. 63, 71 (2010) (The court "require[s] the basis of the challenge to be directed specifically to the agreement to arbitrate before the court will intervene," even in the case where, *e.g.*, "the alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of that contract[.]"); *Buckeye*, 546 U.S. at 445-46 ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."); *Wright v. SFX Entm't Inc.*, No. 00 Civ. 5354, 2001 WL 103433, at *3 (S.D.N.Y. Feb. 7, 2001) ("The teaching of *Prima Paint* is that a federal court must not remove from the arbitrators consideration of a substantive challenge to a contract unless there has been an independent challenge to the making of the arbitration clause itself.") (citation omitted); *Mahant v. Lehman Bros.*, No. 99 Civ. 4421, 2000 WL 1738399, at *2 (S.D.N.Y. Nov. 22, 2000) ("Claims concerning duress, unconscionability, coercion, or confusion in signing should be determined by an arbitrator because those issues go to the formation of the contract.") (citation and quotation marks omitted).

Here, while Plaintiff states in his pre-motion letter that he "intends to assert that the arbitration agreement[s] [are] unconscionable," he supports that assertion not through an attack on the Arbitration Provisions, but rather through an attack going to enforcement of the entirety of the Agreements. *See* Dkt. 25 at 2 ("Specifically, enforcement *of the contract* will result in the unjust enforcement of an onerous contract term – applying the law of Utah, a state without a usury statute, to circumvent the application of New York's (and every other state's) usury laws – through bargaining power disparity and a *standardized, non-negotiable, misleading fine-print contract.*") (emphases added). Likewise, the Complaint refers generally to an "unlawful and usurious contract" (¶ 61) that Plaintiff asserts is "void" (¶ 62). Plaintiff does not suggest any basis to conclude that the Arbitration Provisions *themselves* are unconscionable or explain why

he would not be able to assert the very same claims regarding alleged usury law violations before an arbitrator.

For this reason, too, the arbitrator must address whether Plaintiff's agreement to arbitrate is valid and enforceable.

## IV.    Even If The Court Were To Address Whether The Arbitration Provisions Are Valid And Enforceable, Arbitration Must Be Compelled.

This Court should not reach the question of whether the Arbitration Provisions are valid and enforceable given Plaintiff's express agreement to arbitrate that question and his general attack on the entirety of the Agreements.  But even if the Court were to reach that question, arbitration must be compelled because Plaintiff cannot demonstrate that the Arbitration Provisions are unconscionable under *either* Delaware or Utah law, which apply to the Agreements through their respective choice of law provisions.[5]  Indeed, both Delaware and Utah law favor arbitration and courts in those states routinely reject similar unconscionability attacks on arbitration agreements.  *See, e.g., Miller v. Corinthian Colleges, Inc.*, 769 F. Supp. 2d 1336, 1344-45 (D. Utah 2011) (Under Utah law, "a party claiming unconscionability bears a heavy burden.  [. . .] Arbitration agreements, generally speaking, are not substantively unconscionable under Utah law.  The Utah Supreme Court has made clear 'that arbitration agreements are favored in Utah.'") (quoting *Sosa v. Paulos*, 924 P.2d 357, 359 (Utah 1996)); *Gonzalez v.*

---

[5]        Plaintiff is incorrect in asserting in his pre-motion letter that New York law applies to the question of whether the Arbitration Provisions are unconscionable.  Dkt. 25 at 2.  While Plaintiff is correct that *state* law applies to that question, courts routinely enforce choice-of-law provisions when addressing enforceability of contracts.  *See WeWork Cos. Inc. v. Zoumer*, No. 16-cv-457, 2016 WL 1337280, at *3-*6 (S.D.N.Y. Apr. 5, 2016) (applying state law designated in choice of law provision to question of whether arbitration provision was unconscionable).  Nonetheless, the outcome would be no different under New York law.  *See, e.g., Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571-73 (S.D.N.Y. 2009) ("[E]ven if the Agreement was a form contract offered on a 'take-it-or-leave-it' basis and [defendant] refused to negotiate the Arbitration Provision, this is not sufficient under New York law to render the provision procedurally unconscionable" because "[i]t is beyond dispute that, under New York law, [a]rbitration agreements are enforceable despite an inequality in bargaining power," and arbitration agreements will not be found substantively unconscionable where they "equally bind[] [both plaintiff and defendant] to arbitration[.]") (internal citation and quotation marks omitted).

*Citigroup*, No. 09-cv-017, 2009 WL 2340678, at *2 (D. Del. Jul. 30, 2009) (rejecting unconscionability attack on arbitration agreement where it could not "be said that the substance of the arbitration agreements, common to many other enforceable arbitration contracts, shocks the conscience or that an honest and sensible man would not accept them"); *Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908, 911-13 (Del. 1989) (noting that "the public policy of this state favors the resolution of disputes through arbitration," and finding that, although the arbitration provision at issue was contained in a contract of adhesion and presented to plaintiffs on a "take-it-or-leave-it" basis, "it would be highly inappropriate if this Court were to find a contract unconscionable because it adheres to the declared public policy of this State").

Because Plaintiff's pre-motion letter does not contain any assertions of unconscionability that are specific to the Arbitration Provisions, it is difficult to predict what arguments he may present in his opposition brief. It is clear, however, that the facts here provide no reason for the Court to depart from the general policies of Delaware and Utah. When determining whether an agreement is unconscionable, courts look both to "substantive" unconscionability (which "focuses on the contents of an agreement, examining the relative fairness of the obligations assumed") and "procedural" unconscionability (which "focuses on the negotiation of the contract and the circumstances of the parties"). *Miller*, 769 F. Supp. 2d at 1344. Plaintiff can demonstrate neither procedural nor substantive unconscionability with respect to the Arbitration Provisions.

Indeed, federal courts applying the FAA routinely reject attacks on arbitration provisions as unconscionable under Delaware or Utah law where, like here, an arbitration agreement: (i) is mutually enforceable; (ii) advises the plaintiff in all capital letters that he is agreeing to

11

arbitration;[6] (iii) allows the plaintiff a reasonable opportunity to opt out after signing the agreement; and (iv) provides for almost all of the arbitration fees and expenses to be covered by the defendant. *See, e.g.*, *Giles v. GE Money Bank*, No. 11-cv-434, 2011 WL 4501099, at *4 (D. Nev. Sept. 27, 2011) (rejecting attack on arbitration provisions governed by Utah law where provisions included "all capital, bolded font," and plaintiff "had the opportunity to opt-out of the arbitration provisions"); *Wynne v. Am. Express Co.*, No. 09-cv-00260, 2010 WL 3860362, at *7-*8 (E.D. Tex. Sept. 30, 2010) (same, where arbitration provision contained "mutual obligation to arbitrate" and there was no alleged "fraud, deceit, or misrepresentation involved in the acceptance of the agreement"); *Stinger v. Chase Bank, USA, NA*, 265 F. App'x. 224, 229 (5th Cir. 2008) (rejecting unconscionability attack on arbitration agreement under Delaware law, where arbitration provisions "were not one-sided, but bilateral," and where plaintiff could have rejected the terms offered by the defendant); *Heiges v. JP Morgan Chase Bank, N.A.*, 521 F. Supp. 2d 641, 649-50 (N.D. Ohio 2007) (same, noting that "the adhesion nature of a contract is not a basis, without more, for finding its provisions substantively unconscionable" and that "the mere contention that the cost of arbitration would be excessive, without any record support, is insufficient to invalidate an arbitration agreement").

Accordingly, this Court should compel arbitration even if it were to reach the question of unconscionability.

---

[6]     Arguments about "fine print" would, in any event, not be a valid ground to attack the Arbitration Provisions, because they are not grounds for invalidating consumer agreements generally. *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687-89 (1996) (overturning the invalidation of an arbitration agreement under Montana law for failure to use underlined, capital letters in the arbitration clause where such requirement did not apply to all contracts); *see also DirecTV v. Imburgia*, 136 S.Ct. 463, 470-71 (2015) (overturning state court's invalidation of arbitration provision because courts may refuse to enforce such provisions only on grounds on which any other contract provision may be found unconscionable).

## V.     Plaintiff Is Required to Arbitrate His Causes of Action Against Steel Partners.[7]

Plaintiff also should be compelled to arbitrate his causes of action against Steel Partners.

Although Steel Partners is not a signatory to the Loan Agreement between Plaintiff and

WebBank, Plaintiff consented in the Loan Agreement to arbitrate his disputes with non-

signatories that are "connected with" WebBank—a group that would include Steel Partners—and

agreed that any disputes regarding the application of the Loan Agreement's arbitration provision

would be decided by an arbitrator.  Therefore, the arbitrator must decide in the first instance

whether Plaintiff's causes of action against Steel Partners are arbitrable.  *See infra* Section V.A.

If, however, the question of arbitrability is one for the Court to decide, then Steel Partners

respectfully submits that the Court should compel arbitration under either an equitable estoppel

or agency theory.  *See infra* Section V.B-C.  Accordingly, no matter who decides the question of

arbitrability in the first instance, Steel Partners' motion to compel arbitration should be granted.

### A.     The Arbitrator Must Decide Whether Plaintiff's Causes of Action Against Steel Partners Are Arbitrable.

"[W]here a party seeking to avoid arbitration is a signatory to an arbitration agreement

which incorporates rules that delegate arbitrability questions to the arbitrator, a court need not

reach the issue of whether a non-signatory may compel arbitration, because that is an issue

properly resolved by the arbitrator."  *Lapina v. Men Women N.Y. Model Mgmt. Inc.*, 86 F. Supp.

3d 277, 284 (S.D.N.Y. 2015).  Here, the Loan Agreement provides that Plaintiff will arbitrate

"any past, present, or future claim, dispute, or controversy" not only with WebBank, but also

with any "persons claiming through *or connected with*" WebBank.  Altieri Decl., Ex. B at ¶ 17(a)

---

[7]     The Arbitration Provisions also expressly encompass claims against The Lending Club Members Trust, a trust formed by LendingClub Corp. to segregate and hold investor funds, as a party "connected with [LendingClub]."  *See* Altieri Decl., Ex. A ¶ 18(a); Ex. B. ¶ 17(a).  Even if they did not, however, The Lending Club Members Trust would be entitled to invoke the Arbitration Provisions under well-settled principles of estoppel for the same reasons as those described with respect to Steel Partners in Section V.A-B. *infra*.

(emphasis added).  Plaintiff further agreed to arbitrate any claim concerning "the validity or enforceability of this Arbitration Provision[.]"  *Id.*; *see supra* Section III.  Plaintiff cannot credibly claim that this agreement to arbitrate does not encompass Steel Partners, which, Plaintiff alleges, owns and controls WebBank, and acted in concert with it.  *See* Compl. ¶¶ 12, 29, 43, 97.[8]  Thus, because Plaintiff agreed to arbitrate with Steel Partners, and because that agreement "incorporates rules that delegate arbitrability questions to the arbitrator," the arbitrator must decide in the first instance whether Plaintiff's causes of action against Steel Partners are arbitrable.  *Lapina*, 86 F. Supp. 3d at 284; *accord Contec*, 398 F.3d at 209-10 (arbitrability of claims against a non-signatory to an arbitration agreement should be decided by the arbitrator).

> ### B.      Plaintiff Is Estopped From Avoiding Arbitration Against Steel Partners.

Assuming *arguendo* that the question of arbitrability is one for this Court to decide, the Court should compel Plaintiff to arbitrate his causes of action against Steel Partners under the doctrine of equitable estoppel.  A signatory to an agreement containing an arbitration provision will be equitably estopped from contesting the arbitrability of his causes of action against a non-signatory where "(1) the signatory's claims arise under the subject matter of the underlying agreement, and (2) [] there is a close relationship between the signatory and the non-signatory party."  *In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d 465, 476-79 (S.D.N.Y. 2013) (internal citations and quotation marks omitted); *accord Ragone v. Atlantic Video at Manhattan Ctr.*, 595 F.3d 115, 126-27 (2d Cir. 2010).  As set forth below, both conditions are met with respect to Plaintiff's causes of action against Steel Partners.

---

[8]      Until December 31, 2015, Steel Partners owned 100 percent of WebFinancial Holding Corporation ("WFHC"), which wholly owns WebBank.  *See* Steel Partners Holdings, L.P., Annual Report (Form 10-K), at 3 (Mar. 11, 2016).  On December 31, 2015, Steel Partners' ownership in WFHC decreased from 100 percent to 90.7 percent.  *See id.*  Steel Partners currently continues to own approximately 91 percent of WFHC.

1.      **Plaintiff's Causes of Action Against Steel Partners Arise Under the Loan Agreement Containing the Arbitration Provision.**

Plaintiff's causes of action against Steel Partners are identical to his causes of action against WebBank, which, as noted above, fall within the scope of the broad arbitration provision in the Loan Agreement. *See supra* Section II. Indeed, not only does Plaintiff assert identical causes of action against Steel Partners and WebBank based on the Loan Agreement, (s*ee* Compl. ¶¶ 74-110), he also refers to Steel Partners and WebBank interchangeably, (*see id.* ¶ 12), and alleges that each acted as the other's agent, (*see id.* ¶ 29). The question of whether Plaintiff's causes of action against Steel Partners arise under the Loan Agreement "is thus effectively the same question as whether the identical claims against [WebBank] are within the scope of" the Loan Agreement. *Alghanim v. Alghanim*, 828 F. Supp. 2d 636, 648 (S.D.N.Y. 2011) (Buchwald, J.). Accordingly, because Plaintiff's causes of action against WebBank fall within the scope of the broad arbitration provision in the Loan Agreement, his identical causes of action against Steel Partners do so as well. *See, e.g.*, *id.*; *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 98 (2d Cir. 1999) (plaintiff "is estopped from claiming" that non-signatories are "distinct" from signatories by "treating [them] as a single unit in its complaint"); *Carroll v. Leboeuf, Lamb, Greene & MacRae, LLP*, 374 F. Supp. 2d 375, 378 (S.D.N.Y 2005) (by treating defendants "as a unit . . . plaintiffs' attempt to avoid arbitration by pointing to their distinctiveness is unpersuasive").

In any event, Plaintiff's allegations demonstrate that his causes of action arise under the Loan Agreement even apart from his failure to distinguish between Steel Partners and WebBank. A cause of action arises under an agreement containing an arbitration provision "where the merits of an issue between the parties [i]s bound up with a contract binding one party and containing an arbitration clause[.]" *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 177 (2d

Cir. 2004). While the inquiry is fact specific, courts routinely hold that causes of actions arise under agreements containing arbitration provisions where the plaintiff's claims depend on the unlawfulness of the agreement itself. *See, e.g., id.* at 178 (finding that causes of action were "undeniably intertwined" with the agreements containing the arbitration provisions because those agreements "contain[ed] allegedly inflated price terms that gives rise to the claimed injury"); *Moss v. BMO Harris Bank, N.A.*, 24 F. Supp. 3d 281, 288-89 (E.D.N.Y. 2014) (plaintiff estopped from avoiding arbitration against non-signatories because his "entire case depends on the contents of the loan agreements, and in particular whether their terms are unlawful"), *vacated in part on other grounds*, 114 F. Supp. 3d 61 (E.D.N.Y. 2015).

This is precisely what Plaintiff alleges here. For example, Plaintiff alleges that his agreements with Defendants—including the Loan Agreement—are "unlawful" because they purportedly violate the civil usury statutes in New York and other states. *See* Compl. ¶¶ 61-62, 74-87; *see also* Altieri Decl., Ex. B at ¶ 1 & p. 8-9. Plaintiff further alleges that "Defendants" conspired to provide him with purportedly deceptive "standardized documents"—including the Loan Agreement—that did not disclose that WebBank was purportedly a mere "pass through entity" whose "sole purpose" was to permit LendingClub to "charg[e] Plaintiff an interest rate in excess of New York's usury law." Compl. ¶¶ 58-62. This lack of disclosure, according to Plaintiff, purportedly caused him to "enter[] an illegal and usurious contract through the mail and internet, and as a result [pay] interest amounts in excess of New York's usury law" in violation of RICO. *Id.* ¶¶ 93, 102. Accordingly, the merits of Plaintiff's causes of action against Steel

Partners are "bound up" in, and thus arise under, the subject matter of the Loan Agreement. *JLM Indus.*, 387 F.3d at 177.[9]

### 2.  The Alleged Relationship Between Plaintiff and Steel Partners Justifies Estoppel.

The terms of the Loan Agreement establish the requisite relationship between Plaintiff and Steel Partners to estop Plaintiff from avoiding arbitration with Steel Partners.  Estoppel is warranted if there is "a relationship among the parties which either support[s] the conclusion that [the signatory] ha[s] consented to extend its agreement to arbitrate to [the non-signatory], or, otherwise put, ma[kes] it inequitable for [the signatory] to refuse to arbitrate on the ground that it ha[s] made no agreement with [the non-signatory]." *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 361 (2d Cir. 2008).  Such a relationship exists where, for example, the signatory has agreed to arbitrate with an "undefined" group of non-signatories and it is "foreseeable" that the non-signatory seeking to compel arbitration "would be included among" that group. *Moss*, 24 F. Supp. 3d at 289.

Here, as noted above, Plaintiff agreed in the Loan Agreement to arbitrate any cause of action not only against WebBank, but also against "persons . . . connected with" WebBank. *See supra* Section V.A.  Steel Partners, as the owner and purported controller of WebBank, falls squarely within that group.  Inasmuch as "it was foreseeable based on the language" of the Loan Agreement that Plaintiff had agreed to arbitrate his disputes with Steel Partners, it would be

---

[9]     *Accord, e.g.*, *Moss*, 24 F. Supp. 3d at 288-89; *Riley v. BMO Harris Bank, N.A.*, 61 F. Supp. 3d 92, 99 (D.D.C. 2014) (compelling arbitration of claims against non-signatory where "each of Plaintiff's claims against Defendants relies on the allegation that Plaintiff's loan agreements were invalid under District of Columbia usury law"); *Graham v. BMO Harris Bank, N.A.*, No. 13-cv-1460, 2014 WL 4090548, at *5 (D. Conn. Jul. 16, 2014) ("plaintiffs' claims stem from the loan agreements' payment terms that are allegedly usurious and contrary to the alleged federal and state laws"); *Elder v. BMO Harris Bank*, No. 13-cv-3043, 2014 WL 1429334, at *1 (D. Md. Apr. 11, 2014) (compelling arbitration as to non-signatory where "plaintiff must rely on the terms of the written agreement in which the arbitration clause is contained because it is that agreement that contains the allegedly usurious interest provision upon which this law suit is based").

inequitable for Plaintiff to refuse to arbitrate those disputes now, particularly in light of his identical claims against both Steel Partners and WebBank. *Moss*, 24 F. Supp. 3d at 289 (finding requisite relationship where "the language of the five loan agreements reveals that plaintiffs consented to arbitrate not only with the signatory lenders, but also with the lenders' agents and servicers"). *Accord, e.g.*, *Arnold v. D'Amato*, No. 14-cv-6457(PAE), 2015 WL 4503533, at *9 (S.D.N.Y. Jul. 23, 2015) (compelling arbitration as to non-signatories based on plaintiff's agreement to arbitrate with "any . . . affiliate" of signatory); *Graham*, 2014 WL 4090548, at *5-6 ("foreseeable" that plaintiff would have to arbitrate with non-signatory servicers of loans based on agreement with lenders to arbitrate disputes with "'related third parties'").

### C. The Court Should Compel Arbitration Because Steel Partners Allegedly Acted As WebBank's Agent.

In the alternative, Plaintiff should be compelled to arbitrate his causes of action against Steel Partners under an agency theory. In *Alghanim*, this Court compelled a plaintiff to arbitrate its causes of action against a non-signatory to an arbitration agreement based on the plaintiff's allegations that the non-signatory had acted as the agent of a signatory in implementing the terms of the parties' agreement. *Alghanim*, 828 F. Supp. 2d at 650. Here, Plaintiff alleges that, "at all times mentioned herein," Steel Partners "was acting as an agent of the other Defendants," including WebBank and LendingClub, both of which are signatories to arbitration agreements with Plaintiff. Compl. ¶ 29. As in *Alghanim*, Plaintiff therefore "cannot avoid arbitrating" with Steel Partners. *Alghanim*, 828 F. Supp. 2d at 650.

## VI. Plaintiff's Claims Must Proceed To Arbitration On An Individual Basis

The Supreme Court repeatedly has held that the portion of the Arbitration Provisions requiring Plaintiff to arbitrate his claims individually (and not on behalf of a class) is valid and enforceable. *See Concepcion*, 563 U.S. at 348 (reversing decision that found arbitration

provision to be unconscionable in light of class action waiver because "[c]lass arbitration, to the extent it is manufactured . . . rather than consensual, is inconsistent with the FAA"); *see also DirecTV*, 136 S.Ct. at 471 (reversing state court order that invalidated an arbitration provision containing a class waiver because state court's interpretation of the contract did not "place arbitration contracts on equal footing with all other contracts" or "give due regard . . . to the federal policy favoring arbitration) (internal citations omitted); *Italian Colors*, 133 S. Ct. at 2311 (holding that class action waivers are enforceable even where the cost of arbitrating individually exceeds the potential recovery).

Accordingly, the Court should order Plaintiff to arbitrate his claims on an individual (non-class) basis. *See Shetiwy v. Midland Credit Mgmt.*, 959 F. Supp. 2d 469, 476 (S.D.N.Y. 2013) (granting motion to compel arbitration "on an individual basis").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court compel arbitration of Plaintiff's claims against Defendants on an individual basis and stay this action pending completion of the arbitration proceedings.

Dated:  New York, New York
        June 17, 2016

                                        /s/ Benjamin R. Nagin
                                        _____
                                        Benjamin R. Nagin
                                        Jon W. Muenz
                                        SIDLEY AUSTIN LLP
                                        787 Seventh Avenue
                                        New York, NY 10009
                                        Telephone:  (212) 839-5300
                                        Facsimile:  (212) 839-5599
                                        Email:  bnagin@sidley.com
                                        Email:  jmuenz@sidley.com

                                        Mark E. Haddad, *admitted pro hac vice*
                                        SIDLEY AUSTIN LLP
                                        555 West Fifth Street, Suite 4000
                                        Los Angeles, CA 90013
                                        Telephone: (213) 896-6000

Facsimile: (213) 896-6600
E-mail: mhaddad@sidley.com

*Attorneys for Defendant WebBank*

Mark P. Ladner
Jessica Kaufman
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Email: mladner@mofo.com
Email: jkaufman@mofo.com

*Attorneys for Defendants LendingClub Corporation
and The Lending Club Members Trust*

Howard J. Kaplan
Joseph A. Matteo
KAPLAN RICE LLP
142 West 57th Street, Suite 4A
New York, NY 10019
Telephone: (212) 235-0300
Facsimile: (212) 235-0301
Email: hkaplan@kaplanrice.com
Email: jmatteo@kaplanrice.com

*Attorneys for Defendant Steel Partners Holdings,
L.P.*