UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

RONALD BETHUNE, on behalf of himself and all others similarly situated,

               Plaintiff,

- against -

LENDINGCLUB CORPORATION; WEBBANK; STEEL PARTNERS HOLDINGS, L.P.; THE LENDING CLUB MEMBERS TRUST; and DOES 1 through 10, inclusive,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Case No. 1:16-cv-02578 (NRB)

# DEFENDANTS' JOINT REPLY BRIEF IN FURTHER SUPPORT OF MOTIONS TO COMPEL ARBITRATION AND TO STAY ACTION

Defendants LendingClub Corporation, The Lending Club Members Trust, WebBank, and Steel Partners Holdings, L.P., by the undersigned attorneys, respectfully submit this joint reply memorandum of law in further support of their respective motions, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. (the "FAA"), for an Order compelling Plaintiff Ronald Bethune to arbitrate his claims in the above-referenced action against Defendants on an individual basis and to stay such claims pending the outcome of the arbitration proceedings.[1]

**PRELIMINARY STATEMENT**

Plaintiff's opposition brief ("Opp. Br.") barely addresses his agreements to arbitrate this dispute and does not meaningfully address any of the arguments or case law raised in Defendants' joint moving brief ("Mov. Br."). Instead, Plaintiff uses the bulk of his opposition brief to disparage defendant LendingClub Corporation, while ignoring the other defendants that have moved to compel arbitration. Plaintiff offers no reason for this Court to consider declining to enforce the arbitration provisions to which he agreed, and from which he did not opt out, as he was permitted to do. Most critically, the only argument Plaintiff raises that even nominally concerns arbitration—that LendingClub's Arbitration Provision is unconscionable because it supposedly incorporates Utah law—conflates the two agreements at issue here, given that LendingClub's Agreement expressly incorporates *Delaware law*, not Utah law. The only agreement that incorporates Utah law is the one between Plaintiff and WebBank, which is a Utah-chartered industrial bank. In any event, Plaintiff's lone argument is irrelevant to his binding agreement to arbitrate. Plaintiff does not challenge the validity of the choice of law provisions in either Agreement and does not offer any authority to suggest that the Arbitration

---

[1] As with their joint moving brief, Defendants are filing a joint reply brief in accordance with the Court's suggestion. *See* Dkt. 26. Defined terms have the meaning ascribed to them in the moving brief, unless otherwise defined herein.

Provisions (as opposed to the terms governing his loan) would be unenforceable under the laws of a different state.

Plaintiff does not seriously dispute that he agreed to arbitrate the claims asserted here. As discussed further below, Plaintiff's allegations, along with the question of whether this dispute is arbitrable, should be sent to arbitration.

## ARGUMENT

### I. The Arbitrator Must Determine Whether The Arbitration Provisions Are Valid And Enforceable.

As discussed in Defendants' moving brief, arbitration must be compelled where: (1) a valid, enforceable agreement to arbitrate exists; and (2) the claims at issue fall within the scope of that agreement. Mov. Br. at 6 (citing *Bank Julius Baer & Co., Ltd. v. Waxfield Ltd.*, 424 F.3d 278, 281 (2d Cir. 2005)). Plaintiff does not dispute that he agreed to be bound by "broad" Arbitration Provisions, that his claims fall within the scope of those provisions, or that he bears a heavy burden in resisting arbitration. *See, e.g.*, *BNP Paribas Mortg. Corp. v. Bank of America, N.A.*, 949 F. Supp. 2d 486, 503-04 (S.D.N.Y. 2013) ("By their failure to respond, Plaintiffs have conceded this argument."). The only remaining question is whether Plaintiff has met his burden to show that the Arbitration Provisions are not "valid and enforceable." That question, however, should be resolved by an arbitrator.

Indeed, Plaintiff concedes that the "presumption" that a court should resolve the question of arbitrability may be overcome by "clear and unmistakable evidence" that the parties agreed to arbitrate that question. Opp. Br. at 5. Defendants identified precisely such "clear and unmistakable evidence" in the Agreements at issue, which provide that "the validity or enforceability of this Arbitration Provision" must be arbitrated. Mov. Br. at 4. Defendants also cited to a decision in which this Court compelled arbitration under similar circumstances where

2

the "plain language of the Agreement provide[d] clear and unmistakable evidence that [the parties] agreed to arbitrate the question of arbitrability." *Id*. at 8 (citing *Benzemann v. Citibank N.A.*, No. 12 Civ. 9145, 2014 WL 2933140, at *3 (S.D.N.Y. Jun. 27, 2014) (Buchwald, J.), *aff'd in relevant part*, 806 F.3d 98 (2d Cir. 2015)).

In response, Plaintiff contends—without support or explanation—that "[t]he case at bar raises doubts as to who should decide arbitrability." Opp. Br. at 5. But Plaintiff does not articulate how the delegation provisions in the Agreements are in any way ambiguous or seek to distinguish (or even acknowledge) the Court's decision in *Benzemann*. Because the parties agreed to arbitrate the question of arbitrability, and because evidence of that agreement is clear and unmistakable, an arbitrator must address Plaintiff's assertion that the Arbitration Provisions are not valid and enforceable.[2]

## II. Even If The Court Were To Address Whether The Arbitration Provisions Are Valid And Enforceable, Arbitration Must Be Compelled.

Even if the Court were to reach the question of arbitrability, Plaintiff has failed to meet his burden to demonstrate that the Arbitration Provisions are "unconscionable" and should not be enforced according to their terms. As a threshold matter, Defendants explained in their moving brief that Delaware and Utah law apply to the question of whether the Arbitration Provisions are unconscionable in light of the Agreements' respective choice-of-law provisions, and that both states' laws favor arbitration and set a high standard for demonstrating unconscionability. Mov. Br. at 10-12. Plaintiff simply ignores the choice-of-law provisions and the law of Delaware and Utah, and proceeds—without explanation—to address the doctrine of unconscionability under

---

[2] Plaintiff also asserts that the Court should ignore the public policy favoring arbitration based on his allegations that LendingClub's use of arbitration is not "just." Opp. Br. at 6. Plaintiff cites no authority in support of this argument. Further, this argument is merely a repackaging of Plaintiff's unconscionability argument and has no impact on the question of *who* should determine whether the dispute is arbitrable.

3

New York law. Opp. Br. at 6-8. In any event, it does not matter which state's law applies because Plaintiff's argument is based entirely on a misreading of the Agreements.

Specifically, Plaintiff contends that his agreement to arbitrate with LendingClub is "outrageously oppressive because it seeks to enforce the laws of the state of Utah, a state that has no connection with Plaintiff or LendingClub[.]" Opp. Br. at 7. Plaintiff's argument is premised on a factual error. Plaintiff's Agreement with LendingClub *does not incorporate Utah law*; rather, it expressly incorporates the law of Delaware. *See* Altieri Decl., Ex. A ¶ 17 (Dkt. 41-1). LendingClub, of course, has a straightforward "connection" to Delaware given that it is incorporated in that state (Compl. ¶ 24), and Plaintiff does not claim that the application of Delaware law is unconscionable, nor could he.[3] The only agreement governed by Utah law is Plaintiff's Agreement with WebBank. *See* Altieri Decl., Ex. B ¶ 16 (Dkt. 41-2). Plaintiff asserts claims against WebBank, but does not mention his Agreement with WebBank (even though Defendants submitted it with their moving brief), and, even if he had tried to fashion an unconscionability argument with respect to WebBank, he could not do so given that WebBank is chartered in Utah. Compl. ¶ 25.

Plaintiff also argues that the choice-of-law provision is unconscionable because it purportedly "was calculated specifically to evade and circumvent the usury laws of the state of

---

[3] Under New York's choice of law rules, "it is clear that 'in cases involving a contract with an express choice of law provision . . . a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction,' unless there is fraud, violation of public policy, or no 'reasonable basis for choosing the law of the jurisdiction designated by the parties.'" *Aramarine Brokerage, Inc. v. OneBeacon Ins. Co.*, 307 F. App'x 562, 564 (2d Cir. 2009) (quoting *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000)). A party's incorporation in a state provides the necessary "reasonable basis" for applying that state's law pursuant to a choice-of-law clause. *See, e.g., id.* at 564-65; *Hedgeco, LLC v. Schneider*, No. 08 civ. 494, 2009 WL 1309782, at *3 n.1 (S.D.N.Y. May 7, 2009); *Valley Juice Ltd., Inc. v. Evian Waters of France, Inc.*, 87 F.3d 604, 608 (2d. Cir. 1996) (applying New York law pursuant to the parties' choice-of-law provision and finding that "New York has more than sufficient connection with the contract because [defendant] is incorporated in New York"); *see also* Restatement (2d) of Conflict of Laws § 187 cmt. f (1971 & rev. 1988) (noting that the "reasonable basis" test is met where the state of the chosen law is the state "where one of the parties is domiciled or has his principal place of business").

4

New York[.]" Opp. Br. at 7. But which state's law governs the permissible interest rate of Plaintiff's loan has no bearing on the narrow question here, *i.e.*, whether Plaintiff's agreement to arbitrate is unconscionable. Indeed, Plaintiff appears to be arguing that the Arbitration Provisions are unenforceable because his Agreement with LendingClub as a whole is unconscionable. But as set forth in Defendants' moving brief, where a plaintiff challenges an agreement as a whole, the validity of the agreement is presumptively a question for the arbitrator, not the court. *See* Mov. Br. at 8-9 (citing, *inter alia*, *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71 (2010)).[4]

## III. Arbitration Must Also Be Compelled With Respect To Steel Partners and The Lending Club Members Trust.

Defendants explained in their moving brief why arbitration should be compelled as to non-signatories Steel Partners and The Lending Club Members Trust, including because Plaintiff agreed to arbitrate with non-signatories that are connected to LendingClub and WebBank, and pursuant to the doctrines of estoppel and agency. Mov. Br. at 13-18. Plaintiff does not so much as mention Steel Partners or The Lending Club Members Trust in his opposition brief, let alone address the arguments that they raised in the moving brief, and therefore he has conceded that

---

[4] Even if LendingClub and WebBank did not have clear connections to the states whose laws are incorporated into their respective Agreements, Plaintiff does not cite any authority for the proposition that the application of a particular state's law warrants a finding of either procedural or substantive unconscionability, and none of the cases that Plaintiff cites in his section on unconscionability even mention arbitration or choice-of-law. Opp. Br. at 6-7. Nor does Plaintiff explain why an arbitrator is not equally capable of addressing the merits of his unconscionability arguments or why it would be problematic for an arbitrator to apply Utah law when the Court, too, would be required to apply the laws designated in the Agreements' choice-of-law provisions. *See, e.g.*, *WeWork Cos. Inc. v. Zoumer*, No. 16-cv-457, 2016 WL 1337280, at *3-*6 (S.D.N.Y. Apr. 5, 2016) (applying state law designated in choice-of-law provision to question of whether arbitration provision was unconscionable).

5

these entities are covered by the Arbitration Provisions. *See, e.g.*, *BNP Paribas Mortg. Corp.*, 949 F. Supp. 2d at 503-04.[5]

## CONCLUSION

For the foregoing reasons, and those set forth in Defendants' moving brief, Defendants respectfully request that the Court compel arbitration of Plaintiff's claims against Defendants on an individual basis and stay this action pending completion of the arbitration proceedings.

Dated: New York, New York
       August 1, 2016

/s/ Benjamin R. Nagin
Benjamin R. Nagin
Jon W. Muenz
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10009
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
Email: bnagin@sidley.com
Email: jmuenz@sidley.com

Mark E. Haddad, *admitted pro hac vice*
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600
E-mail: mhaddad@sidley.com

*Attorneys for Defendant WebBank*

Mark P. Ladner
Jessica Kaufman
MORRISON & FOERSTER LLP
250 West 55th Street

---

[5] Plaintiff also ignores, and thus has likewise conceded, that the portion of the Arbitration Provisions requiring Plaintiff to arbitrate his claims individually (and not on behalf of a class) is valid and enforceable. Mov. Br. at 18-19.

New York, NY  10019
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900
Email:  mladner@mofo.com
Email:  jkaufman@mofo.com

*Attorneys for Defendants LendingClub Corporation and The Lending Club Members Trust*

Howard J. Kaplan
Joseph A. Matteo
KAPLAN RICE LLP
142 West 57th Street, Suite 4A
New York, NY  10019
Telephone:  (212) 235-0300
Facsimile:  (212) 235-0301
Email:  hkaplan@kaplanrice.com
Email:  jmatteo@kaplanrice.com

*Attorneys for Defendant Steel Partners Holdings, L.P.*