UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
RONALD BETHUNE, on behalf of
himself and all others similarly
situated,

        Plaintiff,

    - against -

LENDINGCLUB CORPORATION, WEBBANK,
STEEL PARTNERS HOLDINGS, L.P., THE
LENDING CLUB MEMBERS TRUST, and DOES
1 through 10,

        Defendants.
----------------------------------X

**MEMORANDUM AND ORDER**

16 Civ. 2578 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

In this putative class action, plaintiff Ronald Bethune alleges that defendants LendingClub Corporation, the Lending Club Members Trust, WebBank, and Steel Partners Holdings, L.P. violated state usury laws, the New York Consumer Protection Act, and the Racketeer Influenced and Corrupt Organizations Act by entering into usurious loan agreements with the plaintiff and others. Defendants have filed a motion to compel arbitration on an individual basis and stay the case pending the outcome of the arbitration. For the following reasons, the defendants' motion is granted.

## I.  Background

Defendant LendingClub Corporation ("LendingClub") operates an internet-based loan matching system, whereby individual borrowers

receive loans from individual investors rather than from traditional loan sources such as banks.  Compl. ¶ 1 (ECF No. 1).

According to plaintiff, LendingClub improperly attempted to circumvent the application of relevant state usury laws to such loans by contracting with defendant WebBank, a bank with a Utah state charter, to act as a "pass through" for LendingClub's loans. Id. ¶¶ 12-13.  This structure allegedly circumvented usury laws in two ways:  first, LendingClub would be able to extend loans under Utah's state law, which does not have a usury law, id., and second, in any event, loans extended through traditional lending institutions such as WebBank are generally not subject to usury laws, id. ¶¶ 8-11.

Plaintiff Ronald Bethune, a New York resident, received a loan through LendingClub in June 2015 with an interest rate that allegedly exceeded the rate permitted by New York's usury law. Id. ¶ 18.  Based on this loan, plaintiff asserts claims against LendingClub and WebBank as well as against Steel Partners Holdings, L.P. as the owner of WebBank, id. ¶ 12, and Lending Club Members Trust as the entity that holds LendingClub's promissory notes executed with borrowers, id. ¶ 5.

Plaintiff does not dispute that his loan was governed by a particular loan agreement, executed on June 29, 2015, which was submitted to the Court with the defendants' moving papers.  Altieri

Decl. Ex. B (ECF No. 41, "Loan Agreement").  The parties to the Loan Agreement were the plaintiff and WebBank.  <u>Id.</u>  Plaintiff also does not dispute that the Loan Agreement contained an arbitration provision, stating in part:

> 17.  Arbitration.  RESOLUTION OF DISPUTES: I HAVE READ THIS PROVISION CAREFULLY AND UNDERSTAND THAT IT LIMITS MY RIGHTS IN THE EVENT OF A DISPUTE BETWEEN YOU AND ME. I UNDERSTAND THAT I HAVE THE RIGHT TO REJECT THIS PROVISION AS PROVIDED IN PARAGRAPH (b) BELOW.

<u>Id.</u> ¶ 17;

> Either party to this Agreement, or LendingClub, may, at its sole election, require that the sole and exclusive forum and remedy for resolution of a Claim be final and binding arbitration pursuant to this section 17 (the "Arbitration Provision"), unless you opt out as provided in section 17(b) below.  As used in this Arbitration Provision, "Claim" shall include any past, present, or future claim, dispute, or controversy involving you (or persons claiming through or connected with you), on the one hand, and us and/or LendingClub (or persons claiming through or connected with us and/or LendingClub), on the other hand, relating to or arising out of this Agreement, any Note, the Site, and/or the activities or relationships that involve, lead to, or result from any of the foregoing, including (except to the extent provided otherwise in the last sentence of 17(f) below) the validity or enforceability of this Arbitration Provision, any part thereof, or the entire Agreement. . . . The scope of this Arbitration Provision is to be given the broadest possible interpretation that is enforceable.

<u>Id.</u> ¶ 17(a);

> You may opt out of this Arbitration Provision for all purposes by sending an arbitration opt out notice to WebBank, c/o LendingClub Corporation, . . . which is received at the specified address within 30 days of the date of your electronic acceptance of this Agreement. The opt out notice must clearly state that you are

> rejecting arbitration; identify the Agreement to which
> it applies by date; provide your name, address, and
> social security number; and be signed by you.  You may
> send the opt out notice in any manner you see fit as
> long as it is received at the specified address within
> the specified time.

Id. ¶ 17(b); and

> NO ARBITRATION SHALL PROCEED ON A CLASS, REPRESENTATIVE,
> OR COLLECTIVE BASIS . . . , EVEN IF THE CLAIM OR CLAIMS
> THAT ARE THE SUBJECT OF THE ARBITRATION HAD PREVIOUSLY
> BEEN ASSERTED (OR COULD HAVE BEEN ASSERTED) IN A COURT
> AS CLASS REPRESENTATIVE, OR COLLECTIVE ACTIONS IN A
> COURT. . . .  Any challenge to the validity of this
> section 17(f) shall be determined exclusively by a court
> and not by the administrator or any arbitrator.

Id. ¶ 17(f).  There is no suggestion that plaintiff utilized the

opt-out mechanism provided.

The Loan Agreement further provides, in a separate paragraph

titled "Miscellaneous," that the Agreement is governed by federal

law and Utah state law.  Id. ¶ 16 ("We are located in the state of

Utah and this Agreement and the Note will be entered into in the

state of Utah.  The provisions of this Agreement will be governed

by federal laws and the laws of the state of Utah . . . .").  The

arbitration provision itself, however, makes no mention of the

state of Utah.

Nearly identical language exists in Paragraph 18 of a Borrower

Membership Agreement between Bethune and LendingClub, which is

governed by Delaware law.  Altieri Decl. Ex. A.  However, the

4

plaintiff appears to challenge only the Loan Agreement.  See Pl.'s
Opp'n (ECF No. 44).

Based on the provisions in the Loan Agreement and Borrower
Membership Agreement, defendants moved to compel arbitration of
plaintiff's claims on an individual basis and stay the case pending
the outcome of the arbitration.

## II.  Discussion

The legal analysis of arbitration clauses is governed by the
Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA").  In relevant
part, Section 2 of the FAA states, "A written provision in . . .
a contract evidencing a transaction involving commerce to settle
by arbitration a controversy thereafter arising out of such
contract or transaction, . . . shall be valid, irrevocable, and
enforceable, save upon such grounds as exist at law or in equity
for the revocation of any contract."  9 U.S.C. § 2.  Sections 3
and 4 of the FAA grant this Court jurisdiction to compel
arbitration and stay a case pending arbitration.  "The Federal
Arbitration Act reflects an emphatic federal policy in favor of
arbitral dispute resolution."  KPMG LLP v. Cocchi, 132 S.Ct. 23,
25 (2011) (internal quotation marks omitted).

The threshold issue in this matter is whether it is this Court
or an arbitrator that should decide the question of arbitrability.
While there is a general presumption that the question of

5

arbitrability should be resolved by courts, the presumption is rebutted with "clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." <u>Contec Corp. v. Remote Sol., Co.</u>, 398 F.3d 205, 208 (2d Cir. 2005) (emphases and internal quotation marks omitted).  "Clear and unmistakable evidence exists when an arbitration clause explicitly delegates arbitrability determinations to the arbitrator, or when it incorporates by reference arbitration rules that do so." <u>Arshad v. Transp. Sys., Inc.</u>, 183 F. Supp. 3d 442, 446 (S.D.N.Y. 2016).  An exception exists:  if a party challenges the arbitration clause itself as unconscionable, it is the court that must determine arbitrability.  However, if the challenge of unconscionability is directed at the contract as a whole, arbitrability is left for the arbitrator. <u>Rent-A-Center, West, Inc. v. Jackson</u>, 561 U.S. 63, 72 (2010) ("[U]nless [the plaintiff] challenged the [arbitration] provision specifically, we must treat it as valid under [FAA] § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator.").

Here, there is clear and unmistakable evidence that the arbitration provision, set forth both in the Loan Agreement and Borrower Membership Agreement, explicitly delegated the question

of arbitrability to the arbitrator.  The provision defines a "Claim" that should proceed to arbitration to "include any past, present, or future claim, dispute, or controversy . . . relating to or arising out of this Agreement, . . . including . . . the validity or enforceability of this Arbitration Provision, any part thereof, or the entire Agreement."  Loan Agreement ¶ 17(a); Borrower Membership Agreement ¶ 18(a).  Although in their papers the parties rely on cases construing arbitration provisions according to New York state law rather than according to Utah or Delaware state law, ultimately the conclusion under all three jurisdictions is the same:  this type of broad language provides the necessary clear and unmistakable evidence that, here, arbitrability is for the arbitrator to decide.  See Arshad, 183 F. Supp. 3d at 446; Belnap v. Iasis Healthcare, No. 15-4010, 2017 WL 56277, at *7-8 (10th Cir. Jan. 5, 2017); Home Buyers Warranty Corp. v. Jones, No. 15-MC-324-RGA-MPT, 2016 WL 2350103, at *5 (D. Del. May 4, 2016), report and recommendation adopted, 2016 WL 3457006 (D. Del. June 21, 2016).

Plaintiff does not dispute the foregoing.  Rather, in his perfunctory brief, the plaintiff's only attempted argument is that the arbitration provision in the Loan Agreement is unconscionable. However, on closer examination, plaintiff's unconscionability challenge is not directed at the arbitration provision, but at the

*agreement as a whole* because of its choice of Utah law as the governing law:

> The contract's arbitration clause is outrageously oppressive because it seeks to enforce the laws of the state of Utah, a state that has no connection with Plaintiff or Lending Club, on Plaintiff, a New York resident who entered into the contract in New York. This legal hijacking is compounded by the fact that the choice of Utah law was calculated specifically to evade and circumvent the usury laws of the state of New York (and 45 other states) in order to charge illegal interest rates from desperate borrowers. To allow Lending Club to mandate arbitration is to allow it to evade the laws put in place to protect against the very behavior it has engaged in. Thus, allowing Lending Club to mandate arbitration would allow Lending Club to continue breaking the law in New York State. . . .
>
> The Lending Club arbitration clause is made even more unconscionable, however, by the lack of disclosure to borrowers of their relinquishment of remedies and legal protections. While the arbitration clause does call attention to the fact that arbitration could be mandated, and that arbitration may affect legal rights, it does not disclose that arbitration under Utah law is essentially a waiver of significant and material legal protections. This is despite the fact that Lending Club's choice of arbitration under Utah law was calculated for that very reason. Thus a material fact was intentionally kept from Bethune, making this clause not only substantively outrageous but also procedurally defective.

Pl.'s Opp'n 7-8.[1]  None of this argument attacks the arbitration provision itself.  Indeed, the logic of the argument provides further evidence that plaintiff's dispute is with the choice-of-law provision rather than the arbitration provision.  Whether the

---

[1] As defendants point out, the agreement governed by Utah law is the agreement between plaintiff and WebBank, not the agreement between plaintiff and LendingClub.  This point of contention does not affect our legal analysis.

choice-of-law provision will be enforced has yet to be determined, but such a decision can be made in an arbitral forum.  Because plaintiff does not argue that any aspect of the arbitration provision itself is unconscionable, under Rent-A-Center the validity of the contract is not for us to decide.  561 U.S. at 72. Intoning the phrase "arbitration clause" is insufficient to require judicial intervention at this stage.

Likewise, to the extent there exist any questions as to arbitrability against the non-signatories to the Loan Agreement and Borrower Membership Agreement, that question is for the arbitrator to decide.  Lapina v. Men Women N.Y. Model Mgmt. Inc., 86 F. Supp. 3d 277, 284 (S.D.N.Y. 2015) ("[W]here a party seeking to avoid arbitration is a signatory to an arbitration agreement which incorporates rules that delegate arbitrability questions to the arbitrator, a court need not reach the issue of whether a non-signatory may compel arbitration, because that is an issue properly resolved by the arbitrator.").  Plaintiff does not challenge this proposition.

Finally, defendants urge us to compel arbitration only on an individual basis.  The agreements say in clear, capitalized letters, "NO ARBITRATION SHALL PROCEED ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS . . . ."  Loan Agreement ¶ 17(f); Borrower Membership Agreement ¶ 18(f).  While they further state, "Any

9

challenge to the validity of this section . . . shall be determined exclusively by a court and not by the administrator or any arbitrator," id., plaintiff asserts no challenge at all to the defendants' request to compel arbitration on an individual basis. Consequently, we are provided with no basis to deny the request that we enforce this language according to its plain meaning. Am. Exp. Co. v. Italian Colors Rest., 133 S. Ct. 2304, 2309 (2013) ("[C]onsistent with [the FAA], courts must rigorously enforce arbitration agreements according to their terms . . . .") (internal quotation marks omitted); AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 351 (2011) ("Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations.").

### III. Conclusion

For the foregoing reasons, the defendants' motion to compel arbitration on an individual basis and stay the case pending the outcome of arbitration is granted. The parties are directed to submit a joint letter to report on the progress of the arbitration on June 15, 2017, and every three months thereafter. This Order resolves docket entries 35, 36, and 38.

**SO ORDERED.**

Dated:    New York, New York
          January 30, 2017

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

10